UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAULINE ANTOINETTE SORIAN[1],

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No.  19-cv-00445-DMR

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 17, 22

Plaintiff Pauline Antoinette Soria ("Plaintiff" or "Soria") moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Soria not disabled and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*  The Commissioner cross-moves to affirm.  For the reasons stated below, the court GRANTS Soria's motion in part, denies the Commissioner's cross-motion, and remands this case for further proceedings.

**I.      PROCEDURAL HISTORY**

Soria alleges disability beginning on December 11, 2013.[2]  AR 160.  On October 6, 2014,[3] Soria filed an application for Supplemental Security Income ("SSI") benefits, which was initially

_____

[1] Although the case caption states that Plaintiff's last name is "Sorian," the record indicates that it is "Soria."

[2] The ALJ's decision states that Soria's date of onset was March 17, 2014.  AR 13.  The record contains two applications, one dated October 6, 2014 with an onset date of December 11, 2013 and another dated January 12, 2015 with an onset date of March 17, 2014.  AR 160-162, AR 163-173.  This discrepancy is not material to the outcome of the present motions.

[3] The ALJ's decision states that Soria applied for benefits on October 6, 2014.  AR 13.  However, Soria's motion states that she applied for benefits on January 12, 2015.  The record contains two applications, one dated October 6, 2014 and another dated January 12, 2015.  This discrepancy is not material to the outcome of the present motions.

denied on June 10, 2015 and again on reconsideration on December 18, 2015.  Administrative Record ("AR") 160, 94-98, 103-07.  On January 15, 2016, Soria requested a hearing by an Administrative Law Judge ("ALJ").  AR 108-11.  ALJ Arthur Zeidman held a hearing on July 25, 2017.  AR 35-67.

The ALJ issued a decision finding that Soria was not disabled.  AR 13-27.  The ALJ determined that Soria has the following severe impairments: history of alcohol abuse and lumbar disc disease.  AR 15.  He found that Soria retains the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that she "can lift and/or carry twenty pounds occasionally and ten pounds frequently, can sit for six hours, stand for six hours, and walk for six hours with normal breaks in an eight-hour workday, [and] can push and/or pull as much as she can lift and/or carry."  AR 20.

Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform Soria's past work as a receptionist and a stocker salesperson, the ALJ concluded that Soria is not disabled.

The Appeals Council denied Soria's request for review on November 28, 2018.  AR 1-6.  The ALJ's decision therefore became the Commissioner's final decision.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  Soria then filed suit in this court pursuant to 42 U.S.C. §§ 405(g) and 1382(c).

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not

1   affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

2   *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

3         If the evidence reasonably could support two conclusions, the court "may not substitute its

4   judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

5   F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's

6   decision for harmless error, which exists when it is clear from the record that the ALJ's error was

7   inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d

8   1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

9         The court has reviewed the entire record in this case. For the purposes of brevity, this

10   order cites only those facts that are relevant to the court's decision.

## III.   ISSUES PRESENTED

12        Soria argues that the ALJ erred in (1) weighing the medical opinions; (2) failing to find

13   that some of her impairments are severe; (3) finding that Soria's impairments do not meet or equal

14   a listing; (4) determining Soria's credibility; and (5) assessing her RFC. These arguments are

15   addressed in turn.

### A.   Medical Opinions

#### 1.   Legal Standard

18        Courts employ a hierarchy of deference to medical opinions based on the relation of the

19   doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat

20   the claimant ("treating physicians") and two categories of "nontreating physicians," those who

21   examine but do not treat the claimant ("examining physicians") and those who neither examine nor

22   treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

23   1995). A treating physician's opinion is entitled to more weight than an examining physician's

24   opinion, and an examining physician's opinion is entitled to more weight than a non-examining

25   physician's opinion. *Id.*

26        The Social Security Act tasks the ALJ with determining credibility of medical testimony and

27   resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's

28   opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881

United States District Court
Northern District of California

3

F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons."  *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996).  If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725 (citation omitted).  "[B]road and vague" reasons do not suffice.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  This same standard applies to the rejection of an examining physician's opinion as well.  *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant).  An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."  *Sousa*, 143 F.3d at 1244.  An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

Soria argues that the ALJ erred in discounting the opinions of her medical providers with respect to her physical and mental health impairments.  Mot. at 9-16.

### 2.      Opinions on Physical Limitations

#### a.      Michael E. Hebrard, M.D.

Soria was a patient of Advanced Physical Medicine and Rehabilitation Group from

United States District Court
Northern District of California

September 2013 through May 2017, where she received treatment from Dr. Hebrard, a specialist in Physical Medicine, Pain Management and Electrodiagnostic Medicine.  AR 575-580, 699-703. On April 4, 2016, Dr. Hebrard submitted an RFC Questionnaire, which limited Soria to lifting and/or carrying less than ten pounds occasionally and less than ten pounds frequently, sitting for less than two hours, standing for less than two hours, and walking for less than two hours with the ability to shift at will from sitting to standing/walking.  AR 635-637.  In addition, Dr. Hebrard opined that Soria can sit a total of thirty minutes before changing positions, stand for five minutes, and must walk around every five minutes.  AR 635-636.  Dr. Hebrard opined that Soria may occasionally stoop and kneel but never crouch, crawl, or climb stairs/ladders.  AR 636.  Dr. Hebrard also opined that reaching and pushing/pulling were affected by Soria's impairments.  AR 636.  Dr. Hebrard opined that on average Soria's impairments would interfere with her concentration or pace of work 50% of the day.  AR 637.

The ALJ gave no weight to Dr. Hebrard's opinions concerning whether Soria is partially disabled or whether she has a sedentary functional capacity as these are issues reserved to the Commissioner.[4]  AR 26.  The ALJ gave little weight to Dr. Hebrard's remaining opinions, finding that: (1) to the extent they are based on the Soria's self-reported symptoms and activities, they are undermined by incongruities in the claimant's reported symptoms; (2) they are not supported by

---

[4] Soria argues that the ALJ failed to consider Dr. Hebrard's worker's compensation work status assessment as opinion evidence, specifically to note its consistency with the medical source statement he submitted in April 2016.  Mot. at 10-11, n.1.  An ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F.Supp.2d 1099, 1104-1105 (C.D. Cal 2002) (citing *Coria v. Heckler*, 750F.2d 245, 247 (3rd Cir. 1984)).  However, "the ALJ [may] reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the plaintiff's] disability for worker's compensation purposes," and "should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim." *Id.* at 1105 (citing *Coria*, 750 F.2d at 247-248).

The ALJ did not commit error in this regard.  Dr. Hebrard's work status assessment was not contained in his medical source statement but was instead in his treatment notes.  While the ALJ gave no weight to Dr. Hebrard's conclusion as to Soria's alleged disability, the decision shows that the ALJ considered some of the objective medical findings in Dr. Hebrard's treatment notes, including the work status assessment, as well as the limitations outlined in Dr. Hebrard's medical source statement.  *See, e.g.*, AR 22-26.

1    adequate explanation; and (3) they are not supported by substantial other evidence in the record.

2    AR 26.  Instead, the ALJ gave partial weight to the non-examining state agency medical

3    consultants G. Lee, M.D. and J. Bradus, M.D.[5]   All but one of the ALJ's stated reasons for giving

4    little weight to Dr. Hebrard's remaining opinions fail to meet the "specific and legitimate"

5    standard.

6         First, the court agrees that "to the extent" Dr. Hebrard's opinions are based on self-reported

7    symptoms and activities, they may be undermined by incongruencies in the claimant's reports to

8    her health care providers as discussed further below.  However, Dr. Hebrard's opinions were not

9    based solely on Soria's self-reported symptoms.  Throughout the four-year period during which

10   Dr. Hebrard treated Soria, he extensively documented his objective findings regarding Soria's

11   decreased range of motion, decreased motor strength in the lower extremities, decreased sensation,

12   and positive joint compression test.  *See, e.g.*, AR 575-580, 699-703.  There is no indication that

13   Dr. Hebrard failed to rely on these objective findings as well as imaging studies when he formed

14   his opinions regarding Soria's limitations.  Moreover, Dr. Hebrard's notes show that he considered

15   the possibility that Soria was overstating her symptoms but was convinced over time that the

16   objective findings showed that her condition had deteriorated.  Thus, on April 3, 2014, Dr.

17   Hebrard noted in his records that Soria's "subjective complaints outweigh the objective findings."

18   AR 475.  At that time, Dr. Hebrard believed Soria would be capable of sedentary work with

19   limitations despite her subjective complaints.  AR 475.  However, upon reviewing Soria's January

20   2016 MRI, Dr. Hebrard found that Soria had a 6 mm broad central protrusion that had increased in

21   size from 2 mm since the prior MRI.  AR 863.  Dr. Hebrard noted that this explained why Soria's

22   condition had gotten progressively worse.  AR 863, 864.

23        Second, the ALJ found that Dr. Hebrard's opinion is not supported by adequate

24

25   ───────────────
     [5]  The ALJ's decision to give more weight to the two non-examining state agency medical

26   consultants than to Soria's long-standing treating physician is particularly problematic because
     neither of the non-examining consultants had the opportunity to review the results from the

27   January 2016 MRI and subsequent records which show a significant worsening in the central disc
     protrusion.  AR 69-70, 80-83.  Moreover, it is worth noting that Dr. Bradus placed Soria at a more

28   restrictive sedentary RFC than the light RFC determined by the ALJ.  AR 88-90.

explanation.  AR 26.  However, Dr. Hebrard's treatment notes from April 4, 2016, the same day he prepared the medical source statement, include detailed findings regarding reduced range of motion, reduced strength, reduced sensation, and a positive slump test which support his medical opinion regarding Soria's functional limitations.  AR 849-853.  The treatment notes state that "[t]he patient continues to have ongoing functional issues in relationship to ability to function which is more weakness in opposed to pain and difficulty standing and walking due to muscle spasms."  AR 852.  By the time Dr. Hebrard completed his 2016 RFC Questionnaire, he had been examining and treating Soria for almost three years and his treatment records contain extensive notes regarding the progression of her condition, including his consideration of the 2016 MRI which showed a worsening of her condition.

Finally, the ALJ found that Dr. Hebrard's opinion is inconsistent with and not supported by substantial other evidence in the record.  AR 26.  By way of example, the ALJ notes that "his opinion that she can stand for only five minutes before changing position is not supported by documentation by any other medical providers, despite the number of times the client was seen in the emergency room at various hospitals, and despite numerous visits to therapist at Tri-City Health Center."  AR 26.  Although the ALJ discounted Dr. Hebrard's opinion because no other medical provider found that Soria had the physical limitations contained in Dr. Hebrard's 2016 RFC Questionnaire, this may not be meaningful because there is no indication that other examining health care providers evaluated Soria's physical functional capacity.  The only other assessments of Soria's physical functional capacities were done by the non-examining state agency medical consultants. G. Lee, M.D. and J. Bradus, M.D.

The imaging studies are consistent with Dr. Hebrard's opinions in that they support that Soria suffered lumbar disc disease that worsened over time.  AR 338, 336, 865.  Other medical providers also found decreased range of motion, decreased motor strength in the lower extremities, decreased sensation, and diminished reflexes, especially after Soria's 2016 MRI.  *See, e.g.*, AR 347, 356, 661, 666, 785, 855, 910.  It is important to note, however, that the findings from these other medical providers are not always consistent, suggesting that Soria's symptoms waxed and waned.  *See, e.g.*, AR 666, 332, 785, 855.

United States District Court
Northern District of California

1    In sum, although the ALJ may have properly afforded Dr. Hebrard's opinion something

2    less than full weight, the ALJ erred in discounting the opinion of Plaintiff's treating physician, Dr.

3    Hebrard to the level of little weight without specific and legitimate reasons.

### b.    Robert Rovner, M.D.

4

5        Dr. Robert Rovner examined Soria on two occasions and prepared two opinions, one in

6    February 2014 and one in July 2016.  In his February 2014 opinion, Dr. Rovner opined that he did

7    not think surgical intervention was indicated.  AR 331-332.  The ALJ gave partial weight to the

8    February 2014 opinion because he found that Dr. Rovner "did not have the opportunity to review

9    additional medical records and other evidence available at the hearing level in this matter."  AR

10   24-25.  The ALJ nevertheless relied on the 2014 opinion to support the conclusion that Dr. Rovner

11   recommended against surgery, in contradiction to Soria's hearing testimony that surgery was

12   recommended to her.  AR 23.

13       However, the ALJ failed to address Dr. Rovner's July 2016 opinion in which he reviewed

14   the January 2016 MRI results and opined that Soria's symptoms "appear to be due to a

15   combination of degenerative changes in the lumbar spine L3 through S1 as manifested by disc

16   protrusions, facet arthropathy and then the leg symptoms secondary to central and foraminal

17   stenosis that causes a secondary effect of these degenerative changes as well as disc protrusions at

18   all three levels."  AR at 786.  By 2016, Dr. Rovner no longer recommended against surgery.  He

19   opined that Soria had the option of considering surgery "as a more definitive solution" but that

20   there would be risk of complications due to her weight.  AR at 786.  Dr. Rovner further opined

21   that surgery could still be done even if Soria did not lose weight.  AR at 786.  The ALJ erred by

22   failing to consider and assign weight to Dr. Rovner's July 2016 opinion.

### c.    Satish Sharma, M.D.

23

24       Soria argues that the ALJ erred by giving significant weight to the June 11, 2011 opinion

25   of Dr. Satish Sharma.  AR 25.  This opinion was obtained prior to the alleged onset of Soria's

26   disability which occurred no earlier than December 11, 2013.  AR 282-287.  Therefore, Dr.

27   Sharma's opinion did not take into account the workplace injury that allegedly led to Soria's

28   conditions and Dr. Sharma did not have the opportunity to review Soria's subsequent medical

1   records and imaging studies.  As Dr. Sharma's opinion reflected Soria's condition prior to the

2   alleged onset of her disability, the ALJ erred by giving significant weight to this opinion on the

3   question of Soria's disability.

4                    **3.      Opinions on Mental Limitations**

5                    **a.      Lesleigh Franklin, Ph.D**

6          On April 26, 2017, Dr. Lesleigh Franklin conducted a psychological evaluation of Soria

7   and opined on her mental functional impairments.  AR 920-923.  The ALJ gave little weight to Dr.

8   Franklin's opinions because: (1) the Beck Inventories are self-reports rather than objective testing

9   or observational results; (2) the opinions lacked adequate explanation; (3) the opinions appear to

10  be based primarily on what the claimant reported to him; and (4) Dr. Franklin's report does not

11  address inconsistencies between what Soria told him and the other evidence of record.  AR 18.

12  Soria argues that the ALJ's stated reasons for discounting Dr. Franklin's opinion were not specific

13  and legitimate and were not supported by substantial evidence on the record.  Mot. 14-15.  The

14  Commissioner did not respond to Soria's arguments regarding whether the ALJ erred in weighing

15  Dr. Franklin's opinion.

16          First, while the Beck Inventories are self-reports, Dr. Franklin did not rely solely on the

17  Beck Inventories but also conducted a clinical review and administered four other procedures

18  including the Miller Forensic Assessment of Symptoms, Mini Mental State Examination,

19  Repeatable Battery for the Assessment of Neuropsychological Status, and Trail Making A&B.

20  AR 920-925.  The ALJ ignored Dr. Franklin's objective findings regarding functional impairments

21  with language, visuospatial abilities, immediate memory, delayed memory, attention and

22  concentration, and executive functioning.  AR 922-923.  Second, Dr. Franklin's opinions did not

23  lack explanation because they were based on his clinical review as well as the other procedures he

24  administered.  AR 920-925.  The ALJ's third reason for discounting Dr. Franklin's opinion is

25  specific and legitimate to the extent that portions of Dr. Franklin's opinion are based on what

26  Soria reported to him and, as discussed below, the ALJ did not err in making an adverse credibility

27  finding.  AR 18.  If the ALJ properly discounts a claimant's credibility, then medical opinions

28  premised on the claimant's subjective complaints may be discounted as well.  *Tonapetyan v.*

1   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  It follows that the ALJ's fourth reason is also

2   specific and legitimate.  The ALJ discounted Dr. Franklin's opinion because, although Dr.

3   Franklin's reports states that he reviewed available medical records, including Dr. Acenas'

4   medical opinion, his report does not address any of the inconsistences between what Soria told Dr.

5   Franklin and the other evidence in the record.

6          While the ALJ may have properly discounted Dr. Franklin's opinion to the extent it was

7   based on what Soria reported to him, the ALJ did not offer specific and legitimate reasons for

8   discounting Dr. Franklin's opinions regarding Soria's functional limitations to the extent that they

9   are based on his objective findings.

                         **b.        Heather Carruso-Maxey, Ph.D**

11         The ALJ gave only partial weight to the opinion of Dr. Carruso-Maxey, arguing that the

12  opinion is inconsistent with treatment notes and is based on the claimant's subjective reports. AR

13  19.  The ALJ also noted that Dr. Carruso-Maxey found that Soria "ends up staying in bed which

14  creates a cycle of negative thinking" and that Soria had detachment from social relationship.  AR

15  19.  However, Soria reported to other medical providers that she does household chores, swims,

16  and takes trips with friends.  AR 19.  Soria argues that the ALJ's stated reasons for discounting Dr.

17  Carruso-Maxey's opinion were not specific and legitimate and were not supported by substantial

18  evidence on the record.  Mot. 15.  The Commissioner failed to address Soria's arguments

19  regarding whether the ALJ erred in weighing Dr. Carruso-Maxey's opinion.

20         The ALJ erred with respect to an alleged inconsistency between Carruso-Maxey's opinion

21  and treatment notes.  AR 19.  Dr. Carruso-Maxey's notes from Soria's first session stated that her

22  mood was euthymic.  The medical source statement describes Soria's mood as dysthymic, but Dr.

23  Carruso-Maxey wrote the medical source statement more than six months after the initial

24  treatment session.  AR 896, 906.  There is no inconsistency in observing different mental states at

25  different times. The ALJ's second reason for discounting Dr. Carruso-Maxey's opinion as based

26  on claimant's subjective reports is specific and legitimate.  The ALJ notes that there are

27  inconsistencies between what Soria told Dr. Carruso-Maxey and other record evidence.  *See e.g.*,

28  AR 883, 604, 653, 656.  Thus, the ALJ properly discounted Dr. Carruso-Maxey's assessment to

United States District Court
Northern District of California

10

the extent that there are inconsistencies between what Soria told Dr. Carruso-Maxey and the other evidence of record.  AR 19.  However, Dr. Carruso-Maxey's assessment of Soria's limitations are also based on Dr. Carruso-Maxey's own clinical observations.  These include that Soria had difficulty transitioning to different topics when discussing a frustrating interaction, the oppressive nature of Soria's negative conditions, and Soria's difficulties in implementing suggestions in a sustainable way.  AR 887, 890, 896.  Since these observations did not rely on Soria's self-reports, it is error to disregard them based on Soria's credibility.  Although the ALJ gave partial weight to Dr. Carruso-Maxey's opinion, which may account for her clinical observations, he did not specify which parts of the opinion he credited.  Nor is it obvious, given that the ALJ did not analyze Soria's mental health impairments at step four, and did not incorporate (or explain his decision not to incorporate) any mental limitations into her RFC.  Thus, the court finds that the ALJ did not properly account for Dr. Carruso-Maxey's clinical observations.

On remand, the ALJ shall reconsider all of the medical opinions in the record in a manner consistent with this opinion.

**B.    Step Two Analysis**

**1.    Legal Standard**

At step two of the five-step sequential evaluation for disability claims, the ALJ must determine whether the claimant has one or more severe impairments that significantly limit a claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c).  "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quotation omitted).  The Ninth Circuit has held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Id.* (citation omitted).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."  *Id.* (quotations omitted).  A severe impairment "must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 416.921, and the ALJ must "consider the claimant's subjective symptoms,

such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290 (citations omitted).  In addition, when assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments, both severe and non-severe.  20 C.F.R. §§ 416.920(e), 416.945; *see Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1164 (9th Cir. 2008); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments [because] limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.").

The Social Security Administration has supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step process.  *See generally* 20 C.F.R. § 404.1520a.  For step two, the Commissioner must first determine whether the claimant has a medically determinable mental impairment.  20 C.F.R. §404.1520a(b)(1).  Next, the Commissioner must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.   20 C.F.R. § 404.1520a(b)(2), (c)(3).  Finally, the Commissioner must determine the severity of the claimant's mental impairment.  20 C.F.R. § 404.1520a(d).  If the Commissioner rates the claimant's limitations as "none" or "mild," this will generally lead to the conclusion that the impartment(s) is not severe.  20 C.F.R. § 404.1520a(d)(1).

### 2.   Analysis

On step two, the ALJ found that Soria has the following severe impairments: history of alcohol abuse and lumbar disc disease.  AR 15.  Soria argues that the ALJ erred in neglecting to find that her depression and obesity are also severe impairments. The Commissioner responds that the law does not require the ALJ to rule piecemeal on the severity of each alleged impairment and, instead, the severity requirement addresses the cumulative effect of the impairments or impairments.  20 C.F.R. § 416.923.  Because the ALJ found that Soria had a severe impairment, the Commissioner argues that it is irrelevant whether the ALJ specifically characterized Soria's

1    other conditions as separate severe impairments.  Def. Mot. 5-6.  The Commissioner further argues

2    that any error with respect to the step two analysis is harmless, since the ALJ considered all of

3    Soria's impairments, severe and nonsevere, in assessing her RFC.

4         Where the ALJ finds at least one severe impairment at step two, and properly considers all

5    medically determinable impairments at step four, failing to find that any specific impairment is

6    severe is harmless error.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *see also Brown*

7    *v. Berryhill*, No. 16-cv-04022-EMC, 2017 WL 4417516, at *7 (N.D. Cal. Oct. 4, 2017) (finding

8    that an ALJ's failure to find an impairment was "severe" at step two was harmless because the

9    ALJ incorporated all related restrictions into the RFC assessment).  However, if an ALJ does not

10   consider all medically determinable impairments when assessing a claimant's RFC, then an error

11   at step two is not harmless.  *See Mercado v. Berryhill*, No. 16-cv-04200-BLF, 2017 WL 4029222,

12   at *6 (N.D. Cal. Sept. 13, 2017).

13        Here, the ALJ did not incorporate limitations based on Soria's mental impairments or

14   obesity.  *See* A.R. 20.  Further, the ALJ does not discusses these impairments in his step four

15   analysis.  Thus, the court must evaluate the ALJ's step two analysis for error.  *See Mercado*, 2017

16   WL 4029222, at *6.

17                         a.    **Depression**

18        The ALJ concluded that the record does not suggest that a depressive disorder interfered

19   with the claimant's ability to socialize or limited any broad area of mental functioning.  AR 17.  In

20   finding that the claimant's depression is not severe, the ALJ gave little weight to the opinions of

21   Dr. Carruso-Maxey and Dr. Franklin, as discussed above.  Soria argues that the record indicates

22   that Soria experiences severe symptoms of depression and, if properly weighed, the opinions of

23   Drs. Carruso-Maxey and Franklin support a finding of a severe mental impairment at step two.

24   Mot. At 16-17.   The Commissioner's brief fails to address Soria's specific arguments and instead

25   states that the ALJ properly found at step two that Plaintiff had severe impairments and considered

26   all functional limitations established by the reliable evidence, not just the ones identified as severe.

27   The Commissioner further argues that any error is harmless.

28        A review of the medical record shows that that Soria's therapist at Tri-City assessed Soria

United States District Court
Northern District of California

United States District Court
Northern District of California

1  with major depressive disorder and dysthymia.  AR 893, 896, 902, 905.  Soria reported that her

2  emotional distress was mostly related to her pain and her therapist discussed behavioral strategies

3  for managing chronic pain and mindfulness and its relationship to chronic pain.  AR 653.  As

4  discussed above, Dr. Carruso-Maxey found that Soria had some moderate limitations in

5  interacting with others.  AR 885.  To the extent Dr. Carruso-Maxey's opinions regarding Soria's

6  limitations are based on clinical observations rather than Soria's self-reported symptoms, Dr.

7  Carruso-Maxey's opinion regarding limitations should be considered. Further, based on cognitive

8  testing, Dr. Franklin found that Soria showed significant impairments in attention and immediate

9  and delayed memory.  AR 923, 926.  The ALJ did not provide justification for rejecting the results

10  of Dr. Franklin's testing.

11       Thus, the ALJ erred in concluded that Soria's depression was non-severe.  The error is not

12  harmless because the ALJ did not consider Soria's depression in assessing her RFC and did not

13  explain why he did not include any mental health limitations in his step four analysis.

14                  **b.      Obesity**

15       According to Social Security regulations, obesity will be deemed a "severe" impairment,

16  "when alone or in combination with another medically determinable physical or mental

17  impairment(s), it significantly limits an individual's physical or mental ability to do basic work

18  activities."  SSR 02–01p (2002).  In making this determination, an ALJ must "do an individualized

19  assessment of the impact of obesity on an individual's functioning."  *Id.*  In briefly discussing

20  Soria's obesity, the ALJ stated:

21            In this case the claimant 5'7'' tall and weighs about 275 pounds.
22            (Hearing testimony.) Several physicians have recommended she
            lose weight. (See, for example Exhibit 4F[February 2014, by Dr.
23            Rovner, "It goes without saying that weight loss, exercise and
            stretching would be helpful on a preventative basis"]; There is
24            insufficient evidence to establish that this condition, whether alone
            or in combination with other medically determinable impairment,
25            significantly limited the claimant's ability to perform basic work
            activities prior to the established onset date.
26

27  AR. 16.  The ALJ had a responsibility to consider the potential effect of Soria's obesity on her

28  degenerative disc disease. *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003) (the ALJ was

United States District Court
Northern District of California

1  responsible for determining the effect of Plaintiff's obesity upon her other impairments); *Wilson v.*

2  *Astrue*, 752 F.Supp.2d 1146, 1155 (D. Or. 2010) (ALJ failed to adequately consider impact of

3  obesity at step two where Plaintiff suffered from musculoskeletal impairments such as back pain

4  that could be exacerbated by Plaintiff's weight).

5      Soria argues that the ALJ's brief discussion of her obesity does not meaningfully address

6  how her obesity may have impacted her severe degenerative disc disease.  Mot. 15.  However, the

7  evidence in the record cited by Soria does not show that her obesity, alone or in combination with

8  her other impairments, significantly limits her "physical or mental ability to do basic work

9  activities" or exacerbated her other impairments.  Instead, the evidence relates to the impact her

10  weight has on her treatment options.  For example, in his 2016 medical opinion, Dr. Rovner stated,

11  "[w]e then discussed the technical aspects of surgery which become difficult when patients are of

12  large girth. This instrumentation is not designed to work at depth and so the risk of a complication

13  from surgery is greater in this context."  AR 786.  Dr. Hebrard noted, "I would recommend that we

14  get a second opinion or a nutrition consultation to consider and help her with the dietary plan for

15  weight loss so that we can consider other options if surgery is at the table."  AR 798.  When

16  opining on Soria's surgery options, Dr. Tseng stated that "with her body habitus that she would

17  have a risk of residual nerve compression from up-and-down compression" and recommended

18  weight loss to limit this potential risk and increase the likelihood of a successful surgery. AR 666-

19  67.  Since Soria did not explain how obesity should have impacted the ALJ's functional

20  assessment, any error ALJ may have made by failing to meaningfully address Soria's obesity at

21  step two was harmless.

22      **C.      Evaluation of Medical Equivalence at Step Three**

23      Soria next argues that the ALJ erred at the third step in failing to properly evaluate the

24  combined effects of her impairments to determine if they equaled one of the listings in 20 C.F.R.,

25  Pt. 404, Subpt. P, App. 1.

26          **1.  Legal Standard**

27      At step three of the sequential evaluation process, the ALJ considers the medical severity

28  of the claimant's impairments.  If the claimant has an impairment that meets or equals one of the

United States District Court
Northern District of California

1  listings in 20 C.F.R., § Pt. 404, Subpt. P, App. 1 and meets the duration requirement, the ALJ will

2  find that the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  "The listings define

3  impairments that would prevent an adult, regardless of his age, education, or work experience,

4  from performing *any* gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley*,

5  493 U.S. 521, 532 (1990) (emphasis in original).  "To *meet* a listed impairment, a claimant must

6  establish that he or she meets each characteristic of a listed impairment relevant to his or her

7  claim." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (emphasis in original).  "To *equal* a

8  listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least

9  equal in severity and duration' to the characteristics of a relevant listed impairment . . . ."  *Id.* at

10  1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)).  "If a claimant suffers from

11  multiple impairments and none of them individually meets or equals a listed impairment, the

12  collective symptoms, signs and laboratory findings of all of the claimant's impairments will be

13  evaluated to determine whether they meet or equal the characteristics of any relevant listed

14  impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)).  However, "'[m]edical equivalence must be

15  based on medical findings," and "[a] generalized assertion of functional problems is not enough to

16  establish disability at step three.'"  *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)).

17  The claimant bears the burden of establishing a prima facie case of disability under the

18  listings.  *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002); *see also* 20 C.F.R. §

19  404.1520(a)(4)(iii).  "[I]n determining whether a claimant equals a listing under step three of the . .

20  . disability evaluation process, the ALJ must explain adequately [the ALJ's] evaluation of

21  alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172,

22  176 (9th Cir. 1990).  "A boilerplate finding is insufficient to support a conclusion that a claimant's

23  impairment does not" meet or equal a listed impairment.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th

24  Cir. 2001).

25  ### 2.      Analysis

26  At step three, the ALJ found that Soria did not meet or equal the requirements of Listing

27  1.04.  In explaining his conclusion, the ALJ merely stated:

28  The undersigned has considered all  potentially  relevant  listed

16

impairments, including Listing 1.04. The claimant's degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterizes by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, a positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication.

AR 19. Soria argues that the ALJ's boilerplate finding failed to adequately explain why the medical evidence was insufficient to satisfy the listing requirements and was not supported by substantial evidence. The court agrees.

Soria's July 2015 electrodiagnostic ("EMG") study, showed no evidence for lumbosacral radiculopathy or peripheral neuropathy. AR 371. However, after her 2016 MRI, her medical providers believed that Soria may have nerve root compression at the L5 level. AR 777-786 (Dr. Rovner finding that the 2016 MRI contained evidence of a central disc herniation "potentially causing compression of the nerve roots"), 797 (Dr. Hebrard noting the existence of "spine nerve root entrapment"), 859-864 ("same").

Although the record is not always consistent, the medical evidence also reflects multiple observations of a decreased range of motion of the lumbar spine, muscle weakness and sensory and reflex loss. For example, according to Dr. Cheng, Soria has "marked decrease in active [range of motion] of lumbar spine in all planes with provocation of lower back pain." AR 855. Records since January 2016 generally reflect that Ms. Soria's range of motion of the lumbar spine has been 40 degrees or less for flexion and 10 degrees or less for extension. AR 701-702, 727-728, 746, 765, 780, 785, 821, 832-833, 851, 855, 861-862; *but see* AR 666 (on April 18, 2017, Dr. Tseng found, "ROM flexion is full and extension is full."). The records also indicate a decreased sensation. AR 410, 441, 666, 785, 855, 850-851; *but see* AR 332, 341-342, 746-747, 861-862 (records indicating intact sensation). Similarly, some records dating after Soria's 2016 MRI indicate diminished reflexes, but this finding is not always consistent. *Compare*, AR 727-728, 746-747, 764-765, 779-780, 785, 796-797, 820-821, 832-833 *with*, AR 666, 701-702, 808-809, 850-851, 861-862.

On strength testing, in the period following the 2016 MRI, Soria often demonstrated mild muscle weakness bilaterally for hip flexion, knee extension, knee flexion and ankle dorsiflexion. AR 747, 765, 780, 797, 809, 821, 833, 851, 861-62.  However, a few of Soria's consultants found intact strength in the lower extremities.  AR 785, 855.  Finally, the evidence tends to show a positive straight leg raising test more recently.  *Compare*, AR 285, 305, 469, 785, 909 *with*, AR 332, 410, 666, 855, 914.

The Commissioner's brief focuses only on two emergency room visits in 2014 and ignores the significant subsequent evidence discussed in this order.  Def. Mot. at 6-7.  The ALJ erred by providing a boilerplate finding rather than discussing any of this evidence with respect to the listing.  *See Lewis*, 236 F.3d at 512 ("A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet or equal a listed impairment).  On remand, the ALJ should consider discuss the evidence in the record and adequately explain whether this evidence satisfies the listing requirements.  In addition, the ALJ should considered the impact of Soria's obesity on her musculoskeletal impairments in accordance with Listing 1.00Q.

In a footnote, Soria argues that the ALJ has a duty to develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *See Mayes v. Massanari*, 276 F.3d 453, 459 (9thCir. 2001); *Laura G. v. Berryhill*, 357 F. Supp. 3d 1023, 1029 (C.D. Cal. 2019). Soria acknowledges that Drs. Hebrard, Rovner and Tseng did not specifically consider whether her combined obesity and musculoskeletal impairments met or equaled a listing.  Therefore, Soria argues that the ALJ should have obtained a medical expert and requests that this court order the ALJ to obtain medical expert pursuant to HALLEX i-2-5-34(A)(1) on remand.

It is Soria's duty to prove that she is disabled.  "HALLEX does not impose judicially enforceable duties on either the ALJ or this court."  *Lockwood v. Comm'r Social Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010).  This court declines to order the ALJ to obtain a medical expert.

### D.    Credibility

Soria next argues that the ALJ erred in evaluating the intensity and persistence of Plaintiff's symptoms.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.      Legal Standard

In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the

1    claimant's testimony.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit

2    has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's

3    decision to reject a claimant's testimony.[6]  *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir.

4    2014).

5                        **2.       Analysis**

6              The ALJ discounted Ms. Soria's testimony on grounds that: (1) the medical record did not

7    support Soria's testimony that surgery has been recommended; (2) Soria's report of constant pain

8    and neuropathic symptoms were not supported by her daily activities; (3) Soria reported different

9    symptoms to different medical providers; and (4) Soria's verbalized symptomology has not been

10   supported by the observations of medical providers.  AR 22-24.

11                        **a.       Recommendations of Surgery**

12             At the hearing, Soria testified that surgery had "been recommended a few times, but it

13   wouldn't be safe, because I need to lose weight, and which I can't exercise."  AR 54.  The ALJ

14   found that the record "does not support the claimant's hearing testimony that surgery has been

15   recommended."  Soria argues that the ALJ's discussion of this issue mischaracterizes both the

16   facts and the medical evidence.  Mot. 20.  The ALJ focuses on Dr. Rovner's 2014 opinion in

17   which he concluded that "there is no indication for any type of surgical intervention at this point."

18   AR 23.  However, as discussed above, the ALJ ignored Dr. Rovner's 2016 opinion in which he

19   opined that Soria had the option of considering surgery "as a more definitive solution" but that

20   there would be risk of complications because of her weight.  AR at 786.  Dr. Rovner further

21   opined that surgery could still be done even if Soria did not lose weight.  AR at 786.  The ALJ

22   likewise states that Dr. Tseng recommended against surgery.  AR 23.  However, Dr. Tseng

23   recommended against surgery because of Soria's weight.  Specifically, Dr. Tseng stated that "with

24   her body habitus that she would have a risk of residual nerve compression from up-and-down

25   compression" and recommended weight loss because "[i]f the patient is closer to ideal body

26

27   ────────────────

28   [6] The Commissioner here states an objection for the record to the Ninth Circuit's "clear and convincing" standard, but recognizes that this court is bound by Ninth Circuit authority.  Def. Mot. at 8 n.1.

United States District Court
Northern District of California

20

1    weight, the patient would limit potential risk of surgical complications and increase the likelihood

2    of successful surgery." AR 666-67. Plaintiff's hearing testimony is therefore consistent with the

3    record evidence, and the ALJ erred by discounting her credibility on this basis.

### b.    Daily Activities

5        The ALJ also found that Soria's activities do not support her allegation that she is in

6    constant pain. AR 23. To support this conclusion, the ALJ noted that on April 4, 2016 Soria rated

7    her pain an 11/10 and stated that her pain interfered with her ability to see friends, take care of her

8    family, and finish household chores. AR 23. However, one month later, on May 6, 2016 Soria

9    told another healthcare provider that she was frustrated because "all responsible are on her, such as

10   driving her brother, and her grandma, cooking, and other household duties," and that good friends

11   had taken her on a one-week trip for her birthday. AR 23. In June 2016, Soria reported that she

12   had a lot of fun on a trip with friends. AR 23. In addition, the ALJ also notes despite Soria's

13   reported difficulty in personal care, she is often well groomed. AR 24.

14       The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on

15   certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise,

16   does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*,

17   260 F.3d 1044, 1050 (9th Cir. 2001). One does not need to be "utterly incapacitated to be eligible

18   for benefits," and claimants "should not be penalized for attempting to lead normal lives." *Fair v.

19   Bowen*, 885 F.2d 597, 603(9th Cir. 1989); *Reddick*, 157 F.3d at 722. Activities such as driving,

20   cooking and performing chores around the house "are not necessarily transferable to the work

21   setting" and a patient may do these activities despite pain for a number of reasons. *Vertigan*, 260

22   F.3d at 1050. The fact that a claimant may be able to manage some of these day to day tasks "does

23   not mean she could concentrate on work despite the pain or could engage in similar activity for a

24   longer period given the pain involved." *Id.* However, when evaluating Plaintiff's statements, the

25   ALJ may consider "inconsistencies either in [claimant's] testimony or between [her] testimony

26   and [her] conduct," as well as her daily activities. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th

27   Cir. 2002). Daily activities can support the discounting of a claimant's alleged limitations when

28   the claimant's activities either contradict his or her other testimony or meet the threshold for

United States District Court
Northern District of California

transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012).

Soria argues that her statement to her therapist regarding her responsibilities does not mean she is able to complete these tasks effectively or without significant pain or difficulty.  Mot. 22. Soria argues that in that same visit, she told her therapist that "she has a lot of pain and feels pressured emotionally" to shoulder more of the household responsibilities.  AR 646.  Soria further argues that the ALJ, did not develop through testimony at the hearing what Plaintiff actually did on the June 2016 trip or the degree to which she was able to take part.  Mot. 22.  Finally, Soria does not address the inconsistency between her alleged limitations with grooming and Dr. Hebrard's notes that Soria was well-groomed.

The court concludes that the ALJ properly identified and took into consideration the inconsistences between Soria's testimony and other record evidence regarding her daily activities.

### c.      Inconsistent Reports to Different Medical Providers

The ALJ discounted Soria's credibility because she reported different symptoms to different medical providers.  For example, on May 5, 2016, Soria rated her pain at 10/10 and her sitting, standing, and walking tolerance at less than five minutes, but the next day she told her therapist that "all responsibilities are on her, such as driving her brother, and grandma, and cooking, and other household duties," and that good friends were taking her on a one week trip. AR 23.  Although Soria told Ms. Talaee-Rad that she had a lot of pain, Ms. Talaee-Rad documented no observable signs of discomfort.  Furthermore, on October 22, 2013, Soria went to the emergency room and was noted to be lying comfortably in bed, her back non tender, and that she had full range of motions in all extremities. AR 23-24.  However, on November 13, 2013, she reported pain that had been on average 9/10.  AR 24.

The ALJ properly considered the inconsistencies between what Soria reported to her different healthcare providers when assessing Soria's credibility.

### d.      Consistency with the Objective Evidence

The ALJ noted that Soria's verbalized symptomology was not always supported by medical professionals' observations.  For example, in April 2014 she went to the emergency department complaining of low back pain and burning pain in her foot but upon examination, her

United States District Court
Northern District of California

1   lower extremities were normal, she had no focal motor or sensory deficits, and her back was

2   normal to inspection with a normal range of motion.  AR 24.  Nursing notes indicate that she

3   appeared comfortable with no facial grimacing or moaning.  AR 24.  In October 2014, Soria stated

4   that she had three bulging discs, but she exhibited a normal range of motion of the upper and

5   lower extremities and her back exam was normal.  AR 24.  An electrodiagnostic study performed

6   in 2015 did not confirm neuropathy.  AR 23.

7         While the examples identified by the ALJ may demonstrate instances in which Soria's

8   subjective symptoms exceeded what could be determined by objective evidence, as discussed

9   above, the record as a whole contains many examples of objective findings of tenderness to

10  palpation, decreased range of motion, decreased strength, decreased sensation, and diminished

11  reflexes throughout the time period at issue.  Further, the degenerative changes in her 2016 MRI

12  show that her condition deteriorated subsequent to her 2014 MRI.  Thus, the examples selected by

13  the ALJ do not reflect the record evidence as a whole, and therefore do not provide clear and

14  convincing reasons to discredit Soria's testimony as to her limitations.

15                              e.      **Alcohol Abuse**

16        The Commissioner argues that inconsistent testimony regarding her alcohol use is evidence

17  that Soria was dishonest with her doctors.  Def. Mot. 9-10.  The ALJ did not explicitly reject

18  Soria's testimony on this basis.  "Long-standing principles of administrative law require [this

19  court] to review the ALJ's decision based on the reasoning and factual findings offered by the

20  ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been

21  thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation

22  omitted).  "A clear statement of the agency's reasoning is necessary because [the court] can affirm

23  the agency's decision to deny benefits only on the grounds invoked by the agency."  *Brown-*

24  *Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).   Thus, the court will not consider the

25  Commissioner's post hoc rationalizations.

26        In sum, the ALJ offered both valid and invalid reasons to support an adverse credibility

27  finding.  The court therefore must evaluate whether the ALJ's errors were harmless.  *Batson v.*

28  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  If the court finds error with

1  respect to a portion of an ALJ's decision, it may nevertheless affirm the finding "so long as there

2  remains substantial evidence supporting the ALJ's decision and the error 'does not negate the

3  validity of the ALJ's ultimate conclusion.'"  *Molina*, 674 F.3d at 1115 (quoting *Batson*, 359 F.3d

4  at 1197).  In other words, an ALJ's error is harmless where it is "inconsequential to the ultimate

5  nondisability determination."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th

6  Cir. 2008).  "[I]n each case we look at the record as a whole to determine whether the error alters

7  the outcome of the case."  *Molina*, 674 F.3d at 1115.

8       In sum, while some of the ALJ's stated reasons for discounting Soria's testimony were not

9  clear and convincing, other stated reasons met the standard.  The court finds that any error

10  regarding the ALJ's stated reasons for discounting Soria's credibility are harmless because the

11  record as a whole supports the ALJ's credibility determination.

12       **E.       Remaining Arguments**

13       Soria argues that the ALJ erred in determining Soria's residual functional capacity.  The

14  court does not reach these arguments in light of its conclusion that the ALJ erred in (1) weighing

15  the medical opinions, (2) failing to consider depression as a severe impairment, and (3) failing to

16  adequately explain the step three analysis.  These errors are not harmless because they could

17  impact the ALJ's RFC assessment and ultimate disability finding.

18       On remand, the ALJ should revisit these issues and make findings consistent with this

19  order and the regulations.

20  **IV.    CONCLUSION**

21       For the foregoing reasons, the court grants Soria's motion in part, denies the Commissioner's

22  cross-motion, and remands this case for further proceedings.

23

24       **IT IS SO ORDERED.**

25  Dated: May 28, 2020

26

27  _____

28  Donna M. Ryu
United States Magistrate Judge

24